<pre>
 1                 THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF CALIFORNIA
 2

 3               HONORABLE JANIS L. SAMMARTINO
             UNITED STATES DISTRICT JUDGE PRESIDING
 4

 5    ------------------------------------------------------------

 6    IN RE:  PACKAGED SEAFOOD       )  NO. 15-MD-2670-JLS
      ANTITRUST LITIGATION           )
 7                                    )  FEBRUARY 22, 2018
                                      )
 8                                    )  STATUS HEARING

 9    ------------------------------------------------------------

10

11    APPEARANCES:

12

13    FOR THE PLAINTIFFS:     FRED T. ISQUITH
                              WOLF HALDENSTEIN
14

15                           BONNY E. SWEENEY
                              HAUSFELD, LLP
16

17                           WILLIAM J. BLECHMAN
                              KENNY NACHWALTER
18

19                           BLAINE FINLEY
                              CUNEO GILBERT & DALUCA, LLP
20

21                           REBECCA R. ANZIDEI
                              RUYAK CHERIAN LLP
22

23

24    FOR THE DEFENDANTS:     BELINDA S. LEE
                              CHRISTOPHER S. YATES
25                            LATHAM & WATKINS
</pre>

1

1                                JOHN ROBERTI
                                 ALLEN & OVERY LLP
2

3                                BARBARA SICALIDES
                                 PEPPER HAMILTON LLP
4

5                                MICHELLE PARIKH
                                 KENNETH A. GALLO
6                                PAUL WEISS RIFKIND WHARTON
                                   & GARRISON LLP
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25        THE COURT REPORTER:      GAYLE WAKEFIELD, RPR, CRR

1      FEBRUARY 22, 2018

2                          AFTERNOON SESSION

3            THE CLERK:  NUMBER ONE ON THE CALENDAR, 15-MD-2670,

4      REGARDING PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION, FOR

5      STATUS.

6            THE COURT:  LET'S GO AHEAD AND HAVE APPEARANCES,

7      STARTING OVER HERE.

8            MS. SWEENEY:  GOOD AFTERNOON, YOUR HONOR, BONNY

9      SWEENEY, FROM HAUSFELD, FOR THE DIRECT PURCHASER CLASS

10     PLAINTIFFS.

11           THE COURT:  OKAY.  THANK YOU.

12           MR. BLECHMAN:  YOUR HONOR, GOOD AFTERNOON.  WILLIAM

13     BLECHMAN, FROM KENNY NACHWALTER, ON BEHALF OF THE KROGER

14     PLAINTIFFS AND AS LIASON COUNSEL --

15           THE COURT:  THANK YOU.

16           MR. ISQUITH:  GOOD MORNING, YOUR HONOR.  FRED ISQUITH,

17     WITH WOLF HALDENSTEIN, FOR THE INDIRECT END PAYERS OR CONSUMER

18     CLASS.

19           I DO HAVE TO APOLOGIZE FOR BEING HERE; YOU'VE GOT THE

20     SECOND BENCH WHILE MY PARTNER BETSY MANIFOLD IS OUT WITH A

21     PREEXISTING OBLIGATION THIS AFTERNOON.

22           THE COURT:  I APPRECIATE IT.

23           MR. FINLEY:  BLAINE FINLEY, CUNEO GILBERT & LADUCA, FOR

24     THE COMMERCIAL FOOD PREPARER CLASS.

25           THE COURT:  ANYBODY ELSE NEED TO --

3

1          MS. LEE:  GOOD AFTERNOON, YOUR HONOR.  BELINDA LEE,

2     WITH LATHAM & WATKINS, REPRESENTING STARKIST AND DONGWON

3     INDUSTRIES.

4          THE COURT:  YOU'RE BACK.

5          MS. LEE:  I AM BACK.

6          THE COURT:  WELCOME BACK, COUNSEL.

7          MS. LEE:  THANK YOU, YOUR HONOR.

8          MR. YATES:  AND CHRIS YATES, WITH LATHAM & WATKINS, MS.

9     LEE'S PARTNER.

10          THE COURT:  OKAY.  THANK YOU.

11          MR. GALLO:  GOOD AFTERNOON, YOUR HONOR.  KEN GALLO,

12     FROM PAUL WEISS, FOR BUMBLE BEE.

13          THE COURT:  THANK YOU.

14          MS. PARIKH:  GOOD AFTERNOON, YOUR HONOR.  MICHELLE

15     PARIKH, FROM PAUL WEISS, FOR BUMBLE BEE.

16          MR. ROBERTI:  GOOD AFTERNOON, YOUR HONOR.  JOHN

17     ROBERTI, WITH THE ALLEN & OVERY LAW FIRM, FOR THAI UNION,

18     CHICKEN OF THE SEA DEFENDANTS.  I NEVER LEFT.

19          MS. SICALIDES:  GOOD AFTERNOON, YOUR HONOR.  BARBARA

20     SICALIDES, PEPPER HAMILTON, ON BEHALF OF DEL MONTE CORPORATION.

21          THE COURT:  VERY WELL.  WE'RE HERE ON A STATUS, AND I

22     HAVE YOUR JOINT -- PROPOSED JOINT AGENDA, WHICH I THINK WE

23     MIGHT AS WELL JUST GO THROUGH THE ITEMS THAT YOU HAVE HERE, AND

24     I'LL REVIEW A COUPLE OF OTHER ITEMS JUST TO MAKE SURE WE'RE ALL

25     ON THE SAME PAGE.

1          SO THE FIRST ITEM THAT YOU'VE PUT FORWARD IS A

2     CENTRALIZED PROCEDURE FOR ENFORCEMENT OF SUBPOENAS.  I'VE READ

3     IT.  I UNDERSTAND THE ISSUES.  DO PEOPLE WISH TO ADDRESS THAT?

4          MR. BLECHMAN:  YES, YOUR HONOR.  THANK YOU.

5          THE COURT:  CERTAINLY.

6          MR. BLECHMAN:  YOUR HONOR, BEFORE I BEGIN, IF I MAY

7     APPROACH TO HAND UP TO THE COURT AND TO DEFENSE COUNSEL COPIES

8     OF TWO ORDERS THAT I THINK MIGHT BE HELPFUL IN THE COURSE OF

9     ARGUMENT.

10         THE COURT:  OKAY.

11         MR. BLECHMAN:  THANK YOU.

12    (NOISE OVER LOUDSPEAKER.)

13         THE COURT:  I SHOULD HAVE MENTIONED THAT THERE ARE SOME

14    PEOPLE LISTENING IN, AND THEY'RE NOT GOING TO BE ADDRESSING THE

15    COURT THIS AFTERNOON, BUT, HENCE, WE HEARD THAT LITTLE BEEP, SO

16    -- AND THAT'S SOMETHING THAT MS. MANIFOLD WAS ALWAYS GOING TO

17    COORDINATE ON BEHALF OF EVERYTHING.  I THINK THERE WAS SOME

18    CONFUSION THE OTHER DAY, MAYBE BECAUSE OF OTHER OBLIGATIONS,

19    BUT THAT WAS SOMETHING THAT YOU ALL HAD REPRESENTED YOU WOULD

20    COORDINATE YOURSELVES SO THAT PEOPLE COULD DO THAT.

21         MR. ISQUITH:  YES, AND SHE DID WITH MR. ROBERTI'S FIRM.

22    THE ISSUE, YOUR HONOR, AROSE FROM SOME DIFFERENCE OF WHERE YOU

23    STOOD, TO BE CANDID, WHETHER THE ORDER HAD TO BE ASKED FOR IN

24    ADVANCE OR NOT, BUT IT GOT ALL STRAIGHTENED OUT AND

25    EVERYTHING'S FINE.

```
 1              MR. ROBERTI:  YOUR HONOR, AND WE'VE SET IT UP SO THAT

 2         THE LISTENERS ARE PURELY ON LISTEN MODE.  YOU WON'T HEAR

 3         ANYBODY'S DOG BARKING OR CHILDREN CRYING, AND THAT'S THE WAY

 4         WE'LL DO IT GOING FORWARD, UNLESS WE GET DIFFERENT INSTRUCTIONS

 5         FROM YOUR HONOR.

 6              THE COURT:  GOING FORWARD, THAT'S PERFECT.  THANK YOU.

 7              SO GO AHEAD, COUNSEL.

 8              MR. BLECHMAN:  THANK YOU, YOUR HONOR.  WILLIAM BLECHMAN

 9         ON BEHALF OF THE PLAINTIFFS.

10              THE FIRST AGENDA ITEM IS WHAT WE CONSIDER A CASE

11         MANAGEMENT ISSUE, YOUR HONOR.  THERE HAS BEEN A DISPUTE WITH

12         REGARD TO ENFORCEMENT OF THE SUBPOENA TO A NONPARTY, LION

13         CAPITAL, ALREADY.  THAT DISPUTE WAS SUBMITTED TO JUDGE DEMBIN.

14         WE HAVE NOT APPEALED THAT RULING.  WE RESPECT BOTH THE PROCESS

15         AND THE RULING, BUT JUDGE DEMBIN'S RULING HAS REVEALED TO US A

16         GAP IN THE CASE MANAGEMENT PROCEDURES, WHICH WE THOUGHT IT

17         APPROPRIATE TO BRING TO THE ATTENTION OF THE COURT, WHICH HAS

18         SPENT A LOT OF TIME AND EFFORT DESIGNING PROTOCOLS THAT WOULD

19         ENHANCE THE EFFICIENT ADMINISTRATION OF THIS MDL.

20              OUR SUGGESTION, YOUR HONOR, IS THAT THE COURT ENTER AN

21         ORDER, NOT UNLIKE OTHER MDL COURTS HAVE DONE, TO PROVIDE FOR

22         THE CENTRALIZED ENFORCEMENT OF SUBPOENAS FOR DOCUMENTS SERVED

23         ON NONPARTIES OUTSIDE OF THIS DISTRICT.

24              IN CONSIDERING SUCH A CASE MANAGEMENT ORDER, WE THINK

25         THERE ARE SEVERAL FACTS THAT ARE NOT IN DISPUTE:  FIRST, THIS
```

1   COURT IS UNDENIABLY THE MOST INFORMED AND KNOWLEDGEABLE COURT

2   ABOUT THE FACTS AND CIRCUMSTANCES AND PROCEDURE OF THIS MDL OF

3   ANY FEDERAL DISTRICT COURT IN THE COUNTRY.

4        THE COURT:  I HOPE SO.

5        MR. BLECHMAN:  SECOND, THIS IS AN MDL PROCEEDING, WHICH

6   UNDER THE AUSPICES OF 28 U.S.C. 1407 IS, BY VIRTUE OF THE

7   STATUTE, ONE TO BE ADMINISTERED EFFICIENTLY, IN THE INTEREST OF

8   EFFICIENCY.

9        THE COURT:  SURE.

10       MR. BLECHMAN:  THIRD, AS OF THIS HOUR, I AM INFORMED

11   THAT THERE ARE MORE THAN 37 SUBPOENAS TO NONPARTIES LOCATED

12   OUTSIDE OF THIS DISTRICT IN WHICH -- INVOLVING NONPARTIES THAT

13   ARE LOCATED SOMEWHERE IN THE ORDER OF BETWEEN 17 AND 30

14   DIFFERENT DISTRICTS AROUND THE COUNTRY, EXCLUDING THE SOUTHERN

15   DISTRICT OF NEW YORK.

16       FOURTH -- AND THERE WILL BE MORE SUBPOENAS, IN ALL

17   LIKELIHOOD, GIVEN THE SCOPE OF THE MDL.

18       FOURTH, THERE HAS ALREADY BEEN ONE DISPUTE WITH RESPECT

19   TO ONE SUBPOENA THAT HAS GIVEN RISE TO LITIGATION.  THERE WILL

20   IN ALL LIKELIHOOD BE OTHERS, AND AS THERE ARE DISPUTES, LAWYERS

21   THAT ARE IN THIS MDL WILL HAVE TO GO HITHER AND YON TO OTHER

22   DISTRICTS TO DEAL WITH ENFORCEMENT PROCEEDINGS IN CONNECTION

23   WITH THE SUBPOENAS, ABSENT SOME CENTRALIZED PROCEDURE.

24       AND FINALLY, YOUR HONOR, WE DON'T THINK THERE IS ANY

25   DISPUTE HERE, AND WE DON'T READ THE DEFENDANTS' PAPERS OR IN

1      OUR MEET AND CONFERS TO HEAR THEM SAY OTHERWISE, THAT A

2      CENTRALIZED PROCEDURE FOR THE ENFORCEMENT OF SUBPOENAS SERVED

3      ON NONPARTIES OUTSIDE OF THE DISTRICT WITH RESPECT TO DOCUMENTS

4      IS UNDENIABLY THE MOST EFFICIENT PROCEDURE THAT THIS COURT

5      COULD IMPLEMENT WITH RESPECT TO THE ADMINISTRATION OF SUCH

6      SUBPOENAS.

7           HOW CAN THE COURT DO THIS?  WHAT IS THE COURT'S

8      AUTHORITY TO DO SO?  WE CITE, YOUR HONOR, AT LEAST TWO SOURCES

9      OF AUTHORITY, EITHER ONE OF WHICH WE THINK GETS US THERE.

10     FIRST AND FOREMOST, AND WE THINK THIS IS THE TRUMP CARD, IS 28

11     U.S.C. 1407, THE MDL STATUTE, WHICH PROVIDES IN SUBSECTION (A)

12     FOR THE JUST AND EFFICIENT ADMINISTRATION OF MDL PROCEEDINGS,

13     AND IN SUBSECTION (B) IT PROVIDES, AND I'M SUMMARIZING HERE,

14     THAT THE MDL COURT HAS THE POWER TO SUPERVISE DEPOSITIONS OF

15     NONPARTIES OUTSIDE OF THE DISTRICT.  BOTH WERE BEFORE 2013,

16     WHEN RULE 45 WAS REVISED, AND AFTER 2013.

17          MDL COURTS, AND THERE HAVE BEEN MANY OF THEM, HAVE

18     EXPRESSLY RECOGNIZED THAT THE REFERENCE IN 28 U.S.C. 1407(B) TO

19     AN MDL COURT'S POWER TO SUPERVISE THE ENFORCEMENT OF SUBPOENAS

20     FOR DOCUMENTS ON NONPARTIES OUTSIDE OF THE -- EXCUSE ME, FOR

21     DEPOSITIONS OF NONPARTIES OUTSIDE THE DISTRICT EXTENDS TO AND

22     APPLIES TO DOCUMENTS AS WELL.

23          WE HAVE CITED TO YOUR HONOR AT LEAST FOUR MDL DECISIONS

24     WHICH HAVE RECOGNIZED THIS SORT OF PROCEDURE SINCE 2013, AND

25     THERE ARE MORE THAN THE FOUR WE HAVE CITED.  WE'VE CITED YOUR

1      HONOR TO *NEURONTIN,* AND *NIASPAN,* AND *NEW ENGLAND COMPOUNDING,*

2      AND THE *FOREX* CASE, ALSO KNOWN AND IDENTIFIED IN OUR PAPERS AS,

3      I BELIEVE, THE *BANK OF NEW YORK MELLON* CASE AS WELL.  IN THOSE

4      CASES, MDL COURTS, NOT UNLIKE THIS COURT, FACING ANTITRUST

5      CASES INSTITUTED A PROCEDURE FOR THE CENTRALIZED ENFORCEMENT OF

6      SUBPOENAS ON NONPARTIES OUTSIDE THE DISTRICT AND CONFERRED

7      POWER ON THE DISTRICT COURT TO DO SO.  WE THINK RULE 45 CAN BE

8      READ TO PROVIDE FOR THIS INDEPENDENTLY OF 28 U.S.C. 1407 --

9      EXCUSE ME, I SAID "INDEPENDENTLY," READING RULE 45 THROUGH THE

10     LENS OF THE MDL STATUTE.

11          RULE 45(D)(B)(I) PROVIDES THAT "AT ANY TIME THE SERVING

12     PARTY," THAT WOULD BE PLAINTIFFS IN THIS INSTANCE, "MAY MOVE

13     THE COURT FOR THE DISTRICT WHERE COMPLIANCE IS REQUIRED," SO A

14     FOREIGN COURT.  IT DOESN'T SAY "SHALL."  IT DOESN'T SAY "MAY

15     ONLY."  IT SAYS "MAY."

16          IN ADDITION, RULE 45(F) PROVIDES, AND I SUMMARIZE HERE,

17     FOR THE TRANSFER FROM -- BY A FOREIGN DISTRICT TO THE ISSUING

18     DISTRICT, HERE THE MDL COURT, OF ENFORCEMENT PROCEEDINGS WITH

19     RESPECT TO A SUBPOENA WHEN THERE ARE EXCEPTIONAL CIRCUMSTANCES.

20          WHAT ARE EXCEPTIONAL CIRCUMSTANCES?  THERE'S NOT A LOT

21     OF LAW ON THAT, BUT THE ADVISORY COMMITTEE NOTES, I SUBMIT, ARE

22     INSTRUCTIVE.  THE ADVISORY COMMITTEE NOTES PROVIDE, YOUR HONOR,

23     TO RULE 45, THAT TRANSFER -- EXCUSE ME, THAT AN EXCEPTIONAL

24     CIRCUMSTANCE MAY BE, AND I QUOTE, "SOME CIRCUMSTANCES TRANSFER

25     MAY BE WARRANTED IN ORDER TO AVOID DISRUPTING THE ISSUING

1    COURT'S MANAGEMENT OF THE UNDERLYING LITIGATION AS WHEN THE

2    SAME ISSUES ARE LIKELY TO ARISE IN DISCOVERY IN MANY

3    DISTRICTS."  THAT LANGUAGE IS VERY MUCH LIKE CERTAINLY -- IS

4    MUCH LIKE THE LANGUAGE AND THE PHILOSOPHY OF 28 U.S.C. 1407(B)

5    AND (A) WITH RESPECT TO THE JUST AND EFFICIENT ADMINISTRATION

6    OF CASES.  SO WE THINK THE MDL STATUTE IS -- PROVIDES THE

7    AUTHORITY FOR THIS COURT TO DO SO.

8         THE DEFENDANTS RAISE THREE ARGUMENTS AGAINST WHAT IS

9    UNDENIABLY THE MOST EFFICIENT PROCEDURE FOR THIS COURT TO USE.

10   ARGUMENT NUMBER ONE IS THAT THE CASES WE CITE TO YOUR HONOR IN

11   THE PAPERS THERE WAS NO DISPUTE AMONG THE -- BETWEEN THE

12   PARTIES WITH REGARD TO WHETHER THERE SHOULD BE CENTRALIZED

13   ENFORCEMENT.

14        THAT ARGUMENT, YOUR HONOR, IS A RED HERRING.  WHY IS IT

15   A RED HERRING?  BECAUSE TO TELL THIS COURT SOMETHING IT KNOWS

16   FAR BETTER THAN I, IT MATTERS NOT ONE WHIT WHETHER THE PARTIES

17   IN THIS CASE AGREE TO DO SOMETHING.  IF THIS COURT DOES NOT

18   HAVE THE AUTHORITY TO DO SO, IT CAN'T ENTER ORDERS.  AND THAT

19   IS WHY, IN THE ORDERS THAT I'VE HANDED TO YOUR HONOR, AND I

20   THINK *NIASPAN,* AND I THINK THE OTHER MAY BE *NEW ENGLAND*

21   *COMPOUNDING*, AND I'VE HIGHLIGHTED -- AND WHAT I'VE HIGHLIGHTED

22   FOR YOUR HONOR, I WANT YOU TO KNOW I'VE ALSO HIGHLIGHTED IN THE

23   PAPERS FOR DEFENSE COUNSEL, BUT THAT IS WHY YOU HAD SPECIFIC

24   SENTENCES IN THOSE ORDERS THAT RECITE THE FACT THAT THE COURT

25   HAD THE AUTHORITY.

1          AND WITH ONE OF THE CASES, WHEN WE GO BACK TO LOOK AT

2     THE BRIEFING THAT OCCURRED, THE BRIEFING DISCUSSES 28 U.S.C.

3     1407, THE MDL STATUTE, BUT THIS COURT CAN'T DECIDE THAT HERE.

4     WHAT IT CAN SEE IS THAT ON THE RECORD BEFORE YOU IN THOSE TWO

5     ORDERS, FOR EXAMPLE, AND IN OTHERS WE COULD FIND, COURTS HAVE

6     EXPRESSLY RECOGNIZED THAT THEY HAVE THE AUTHORITY TO DO THIS.

7          SO THE ISSUE -- SO THE FACT THAT THERE WAS NO DISPUTE

8     ABOUT WHETHER TO ISSUE A CENTRALIZED ENFORCEMENT ORDER IS, AS I

9     SAID, A RED HERRING BECAUSE THE COURT HAS TO HAVE AUTHORITY,

10    AND OTHER COURTS HAVE DONE SO, AND THEY'VE RECOGNIZED THEY HAVE

11    THE AUTHORITY.

12         ARGUMENT NUMBER TWO THE DEFENDANTS MAKE IS THAT RULE 45

13    DOES NOT PROVIDE OR ALLOW FOR THIS.  THIS IS -- YOUR HONOR, IN

14    CANDOR, THIS IS A POINT THAT JUDGE DEMBIN EMBRACED AND --

15    EMBRACED IS NOT A RESPECTFUL WORD.  THIS IS THE CONCEPT AND THE

16    POINT THAT JUDGE DEMBIN RELIED ON IN CONNECTION WITH HIS

17    RULING.  WE THINK RULE 45 CAN BE READ DIFFERENTLY.

18         YOUR HONOR, I'VE TAKEN YOU THROUGH RULE 45(D)(B)(I) AND

19    RULE 45(F) WHICH USES WORDS LIKE "MAY" AS OPPOSED TO "SHALL,"

20    WHICH WE THINK MEANS SOMETHING DIFFERENT.  BUT BEYOND -- AND

21    THERE ARE CASES, YOUR HONOR, THAT TRUTHFULLY WE CAN FIND ON

22    BOTH SIDES THAT SAY AN MDL PROCEEDING IS AN EXCEPTIONAL

23    CIRCUMSTANCE, PROVIDING FOR THE MDL COURT TO DO THIS, AND

24    THERE'S CASES ON THE OTHER SIDE THAT THE DEFENDANTS CAN AND DO

25    CITE THAT GO THE OPPOSITE WAY.  THERE ARE CASES ON BOTH SIDES

1    ON THIS.

2         THE PLAINTIFFS SUBMIT RESPECTFULLY, YOUR HONOR, THAT

3    THE BETTER VIEW ON THIS SUBJECT, INFORMED BY THE EFFICIENCY

4    PRINCIPLES OF 28 U.S.C. 1407, IS TO FIND THAT RULE 45 SHOULD BE

5    READ THROUGH THE LENS OF THE MDL STATUTE.  THERE ARE A NUMBER

6    OF RULES THAT POPULATE THE FEDERAL RULES OF CIVIL PROCEDURE

7    WHERE THE RIGHTS OF PARTIES -- THE PROCEDURAL RIGHTS OF PARTIES

8    IN ANY MDL, THIS ONE INCLUDED, ARE CABINED, THEY'RE LIMITED,

9    THEY'RE QUALIFIED IN SOME WAY WHEN THOSE RIGHTS ARE SOUGHT TO

10   BE ASSERTED IN CONNECTION WITH AN MDL PROCEEDING.

11        TAKE, FOR EXAMPLE, RULE 30, UNDER NORMAL CIRCUMSTANCES,

12   YOUR HONOR, EACH OF THE VARIOUS PLAINTIFF GROUPS AND DIRECT

13   ACTION PLAINTIFFS WITH THEIR OWN CASES WOULD HAVE THE RIGHT

14   UNDER RULE 30 TO DEPOSE A DEFENSE WITNESS FOR SEVEN HOURS IN

15   THEIR CASE, IN THEIR SPECIFIC CASE.  BUT THAT DOESN'T HAPPEN.

16   THERE'S NO REFERENCE IN RULE 30 TO THE MDL STATUTE.  THERE'S NO

17   REFERENCE IN RULE 26, WHICH TALKS ABOUT PROTECTIVE ORDERS.

18   THERE'S NO REFERENCE THERE TO THE MDL STATUTE.

19        SO WHY IS IT THAT A PROCEDURAL RIGHT, LIKE BEING ABLE

20   TO DEPOSE SOMEBODY FOR SEVEN HOURS WHEN YOU HAVE YOUR OWN CASE,

21   IS QUALIFIED, IS CABINED IN SOME WAY WHEN WE'RE IN AN MDL

22   PROCEEDING?  WE SUBMIT, YOUR HONOR, THE REASON IS, BOTH

23   PRACTICALLY AND LEGALLY, IS BECAUSE RULE 30, FOR INSTANCE, OR

24   RULE 45, AS BEFORE US NOW, IS READ THROUGH THE LENS OF THE MDL

25   STATUTE, WHICH FOR PURPOSES OF EFFICIENCY REQUIRES THAT THERE

1     ARE SOME PROCEDURAL RIGHTS THAT PEOPLE HAVE -- THAT PARTIES AND

2     NONPARTIES HAVE ARE CABINED IN SOME WAY AS A MATTER OF

3     PRACTICALITY IN ORDER TO REALIZE THE OBJECTIVES OF THE MDL

4     STATUTE.

5          PLAINTIFFS SUBMIT, YOUR HONOR, THAT READING RULE 45

6     THROUGH THE LENS OF THE MDL STATUTE ENABLES AND FULFILLS THE

7     OBJECTIVE OF THE STATUTE.  IT IMPLEMENTS THE PRACTICAL APPROACH

8     TO CASE ADMINISTRATION THAT IS USED IN MDL PROCEEDINGS, AND IT

9     ENSURES WHAT IS UNDENIABLY THE MOST EFFICIENT PROCEDURE TO USE

10    FOR THE ADMINISTRATION OF PROCEEDINGS WITH RESPECT TO THE

11    ENFORCEMENT OF SUBPOENAS ON DOCUMENTS AND NONPARTIES OUTSIDE

12    THIS DISTRICT.

13         THE DEFENDANTS HAVE ONE OTHER ARGUMENT.  THE DEFENDANTS

14    ARGUE THAT SUCH A CENTRALIZED PROCEEDING WOULD BE UNFAIR TO

15    NONPARTIES WHO ASSERT JURISDICTIONAL DEFENSES.  WE TAKE THE

16    POINT.  WE THINK THE SOLUTION TO THAT IS ONE THAT IS USED IN

17    ONE OF THE ORDERS, YOUR HONOR, I HANDED UP, WHICH IS ONE OF THE

18    REASONS WHY I WANTED TO APPROACH FIRST AND PROVIDE YOU AND

19    DEFENSE COUNSEL WITH THE ORDERS, WHICH WE'VE CITED IN OUR

20    PAPERS.  THESE ARE ORDERS THAT WE CITED IN OUR PAPERS.

21         IN I BELIEVE IT'S THE *NIASPAN* CASE, JUDGE DUBOIS IN

22    THAT ORDER ADDED A SENTENCE IN THE ORDER, WHICH I'VE

23    HIGHLIGHTED FOR YOUR HONOR AND FOR DEFENSE COUNSEL, PROVIDING

24    IN SUBSTANCE THAT IF A NONPARTY INTENDS TO ASSERT A

25    JURISDICTIONAL DEFENSE THEN IT DOESN'T WAIVE THAT DEFENSE AND

```
1        IT APPEARS FOR A LIMITED PURPOSE IN THE MDL COURT FOR PURPOSES

2        OF ENFORCEMENT PROCEEDINGS.

3            YOUR HONOR, IT IS NOT THE INTENTION OF PLAINTIFFS TO

4        HAVE CAUSED A NONPARTY TO WAIVE A JURISDICTIONAL DEFENSE THAT

5        IT INTENDS TO ASSERT.  IT IS THE INTENTION OF THE PLAINTIFFS TO

6        HAVE IN THIS MDL WHAT IS UNDENIABLY THE MOST EFFICIENT

7        PROCEDURE FOR PURPOSES OF ENFORCING SUBPOENAS FOR DOCUMENTS ON

8        NONPARTIES OUTSIDE THE DISTRICT.

9            IN CONCLUSION, YOUR HONOR, THIS COURT HAS ENTERED A

10       NUMBER OF ORDERS AND SPENT A LOT OF TIME TO ESTABLISH

11       PROTOCOLS, ALL OF WHICH WERE DESIGNED TO ENHANCE THE EFFICIENCY

12       OF THE ADMINISTRATION OF THIS CASE.  A CENTRALIZED PROCEDURE

13       FOR THE ENFORCEMENT OF SUBPOENAS FOR DOCUMENTS ON NONPARTIES

14       OUTSIDE THIS DISTRICT IS COMPLETELY IN KEEPING WITH THE

15       APPROACH THIS COURT HAS TAKEN TO THE ADMINISTRATION OF THIS MDL

16       TO THIS POINT, AND, I REPEAT THIS AGAIN, IT IS UNDENIABLY THE

17       MOST EFFICIENT PROCEDURE TO TAKE HERE.

18           FOR ALL OF THOSE REASONS, YOUR HONOR, WE RESPECTFULLY

19       REQUEST THE ENTRY OF AN ORDER CENTRALIZING ENFORCEMENT OF

20       SUBPOENAS FOR DOCUMENTS ON NONPARTIES LOCATED OUTSIDE THE

21       DISTRICT, AND WE SUGGEST, IN RESPONSE TO THE DEFENSE CONCERN

22       ABOUT WAIVING JURISDICTIONAL DEFENSES, THAT THE COURT ADD IN

23       THAT ORDER A SENTENCE -- OR A STATEMENT, EXCUSE ME, NOT UNLIKE

24       WHICH JUDGE DUBOIS ENTERED IN HIS ORDER IN I BELIEVE THE

25       NIASPAN CASE.  THANK YOU, YOUR HONOR.
```

1            THE COURT:  THANK YOU, MR. BLECHMAN.

2            WHO WISHES TO ADDRESS THE COURT ON THIS?

3            MS. PARIKH:  I WILL, YOUR HONOR.

4            THE COURT:  IS THIS A COLLECTIVE RESPONSE?

5            MS. PARIKH:  IT IS, YOUR HONOR.

6            THE COURT:  EXCELLENT.

7            MS. PARIKH:  GOOD AFTERNOON AGAIN, YOUR HONOR, MICHELLE

8    PARIKH, FROM PAUL WEISS, FOR BUMBLE BEE, AND I AM ADDRESSING

9    THE COURT ON BEHALF OF ALL DEFENDANTS.

10           THE COURT:  THANK YOU.  GO AHEAD.

11           MS. PARIKH:  YOUR HONOR, THE ORDER THAT PLAINTIFFS ARE

12   REQUESTING HERE FOR A CENTRALIZED PROCEDURE FOR THE ENFORCEMENT

13   OF NONPARTY SUBPOENAS IS SIMPLY NOT ALLOWED UNDER THE PLAIN

14   LANGUAGE OF RULE 45.  RULE 45(D)(2)(B)(1) IS CLEAR THAT THE

15   REQUIREMENT IS THAT ANY ISSUE WITH COMPLIANCE, ANY MOTION FOR

16   COMPLIANCE OF THE SUBPOENA BE LITIGATED IN THE COURT WHERE

17   COMPLIANCE IS REQUIRED.

18           NOW, I HEARD PLAINTIFFS' COUNSEL TODAY SAYING THAT

19   "MAY" IN 45(D)(2)(B)(1) -- THE USE OF THE WORD "MAY" SUGGESTS

20   THAT IT'S ONE OPTION BUT ISN'T REQUIRED.  THAT IS A NOVEL

21   READING.  I THINK THE MORE NATURAL READING OF THE LANGUAGE

22   THERE -- OF COURSE, IT'S NOT NECESSARY FOR A MOTION TO COMPEL

23   TO BE FILED, AND IN MANY CASES WHEN A SUBPOENA IS ISSUED NO

24   MOTION TO COMPEL IS FILED.  I THINK THE WORD "MAY" IN THE USE

25   OF THAT -- IN THAT RULE IS REALLY REFERRING TO THE FACT THAT A

1      MOTION TO COMPEL MAY BE MADE, BUT -- AND IT MAY BE MADE AT ANY

2      TIME, BUT IT'S OBVIOUSLY NOT A NECESSARY STEP IN THE

3      LITIGATION, AND IT'S NOT A NECESSARY STEP IN THE ISSUANCE OF A

4      SUBPOENA.

5              THERE'S NO AUTHORITY THAT I'M AWARE OF, AND PLAINTIFFS

6      HAVE CERTAINLY CITED NONE, THAT RULE 45 CONTEMPLATES MOTIONS TO

7      COMPEL COMPLIANCE WITH A SUBPOENA ANYWHERE OUTSIDE THE DISTRICT

8      WHERE COMPLIANCE IS REQUIRED.

9              RULE 45 IS ALSO CLEAR THAT THERE ARE A COUPLE OF

10     CIRCUMSTANCES WHERE A MOTION TO TRANSFER IS CONTEMPLATED AND

11     MAY BE APPROPRIATE, AND THOSE ARE -- IN THE TERMS OF THE PLAIN

12     TERMS OF RULE 45, THOSE ARE THE APPROPRIATE CIRCUMSTANCES WHERE

13     A COURT OUTSIDE THE DISTRICT WHERE COMPLIANCE IS REQUIRED COULD

14     HEAR THE ISSUE, AND THAT'S SET FORTH IN RULE 45(F).  THE COUPLE

15     OF CIRCUMSTANCES THAT THE RULE CONTEMPLATES IS WHERE YOU HAVE

16     THE NONPARTY, WHO'S BEEN SERVED THE SUBPOENA, CONSENTING TO THE

17     JURISDICTION OF THE COURT WHO ISSUED THE SUBPOENA.

18             WE OBVIOUSLY CAN'T HAVE THAT HERE BECAUSE THESE

19     NONPARTIES ARE AS OF YET UNIDENTIFIED AND SO THERE'S NO WAY TO

20     DETERMINE WHAT THEIR INTERESTS ARE OR WHETHER THEY WOULD

21     CONSENT, ALTHOUGH I'LL NOTE THAT THE ONE EXAMPLE WE HAVE BEFORE

22     THE COURT IN THIS LITIGATION IS LION CAPITAL, AND IN THAT CASE

23     LION CAPITAL CLEARLY DID NOT CONSENT.  SO IF THAT'S ANY

24     INDICATION, THERE IS CERTAINLY GOING TO BE NONPARTIES WHO WILL

25     NOT CONSENT TO JURISDICTION HERE IN THIS COURT.

1          AND THE SECOND CIRCUMSTANCE WHERE IT'S APPROPRIATE OR

2     THE RULE CONTEMPLATES THAT IT MAY BE APPROPRIATE IS WHERE THERE

3     ARE EXCEPTIONAL CIRCUMSTANCES.  NOW, THE RULE DOESN'T DEFINE

4     WHAT AN EXCEPTIONAL CIRCUMSTANCE IS, AND, OF COURSE, TO BE

5     CLEAR, IN PROPOSING THIS ORDER WE'RE NOT WITHIN THE REALM OF

6     RULE 45(F) BECAUSE RULE 45(F), AND JUDGE DEMBIN NOTED THIS IN

7     HIS ORDER, RULE 45(F) IS DEALING WITH A SITUATION WHERE THE

8     MOTION TO COMPEL COMPLIANCE IS PROPERLY BROUGHT IN THE COURT

9     WHERE COMPLIANCE IS REQUIRED UNDER RULE 45(D), AND THAT A

10    MOTION TO TRANSFER IS MADE WITH THAT COURT, AND THEN THAT COURT

11    CONSIDERS TRANSFERRING.

12         WHAT PLAINTIFFS ARE PROPOSING IS SHORT-CIRCUITING ALL

13    OF THAT AND JUST BRINGING ALL DISPUTES DIRECTLY TO THIS COURT,

14    BUT I THINK RULE 45(F) IS INSTRUCTIVE UNDER THESE

15    CIRCUMSTANCES, AND PARTICULARLY THE COMMENTARY TO THE RULE

16    MAKES VERY CLEAR THAT THE REASON THAT RULE 45(D) IS WRITTEN AS

17    IT IS IS BECAUSE DISPUTES ARE -- THAT DISPUTES SHOULD BE

18    RESOLVED WHERE COMPLIANCE IS REQUIRED AND THAT THE REASON FOR

19    THAT IS TO PROTECT THE LOCAL NONPARTIES.

20         AND WHEN YOU LOOK AT THE COMMENTARY TO RULE 45(F), IT

21    TALKS ABOUT THE FACT THAT A PRIME CONCERN SHOULD BE AVOIDING

22    BURDENS TO LOCAL NONPARTIES SUBJECT TO SUBPOENAS.  MR. BLECHMAN

23    SAID REPEATEDLY THAT IT'S UNQUESTIONABLE THAT THE MOST

24    EFFICIENT PLACE FOR THESE KINDS OF DISPUTES TO BE LITIGATED IS

25    IN THIS COURT.  WELL, THAT CERTAINLY MAY NOT BE THE PERSPECTIVE

1      OF THE NONPARTIES.  THOSE NONPARTIES, AS I MENTIONED ALREADY,

2      HAVE -- UNDER THIS PROPOSED RULE, THEY'LL HAVE NO OPPORTUNITY

3      TO WEIGH IN ON WHAT THEIR INTERESTS ARE, AND THEY MAY HAVE VERY

4      STRONG INTERESTS IN HAVING THE DISPUTE LITIGATED WHERE

5      COMPLIANCE IS REQUIRED.

6          IT'S VERY CLEAR FROM THE WAY THAT 45 IS DRAFTED, AND

7      WHEN YOU LOOK AT THE COMMENTARY IN CONJUNCTION WITH THAT, IT'S

8      VERY CLEAR THAT IT WAS A VERY LARGE CONCERN THAT NONPARTIES NOT

9      BE BURDENED, AND THE PROCEDURE THAT PLAINTIFFS ARE SUGGESTING

10     HERE DOESN'T TAKE THAT INTO CONSIDERATION AT ALL BECAUSE

11     THERE'S NO WAY FOR THIS COURT TO MAKE ANY ASSESSMENT AS TO WHAT

12     THE INTERESTS OR BURDEN WOULD BE ON ANY OF THE, AS OF YET,

13     UNIDENTIFIED NONPARTIES.

14         NOW, PLAINTIFFS HAVE CITED 1407, AND CERTAINLY 1407

15     DOES GIVE CERTAIN AUTHORITY TO THE MDL -- THE COURT THAT'S

16     PRESIDING OVER THE MDL, BUT 1407 IS ENTIRELY SILENT ON DOCUMENT

17     SUBPOENAS.  THERE'S NOTHING IN 1407 THAT INDICATES THAT IT

18     SHOULD BE READ SO BROADLY AS TO OVERRIDE OR UNDERCUT THE CLEAR

19     REQUIREMENTS THAT ARE SET OUT IN RULE 45.  THERE'S JUST NO

20     REASON TO READ 1407 THAT BROADLY.  THERE'S NOTHING IN THE PLAIN

21     LANGUAGE THERE THAT SUGGESTS THAT IT SHOULD BE READ THAT WAY.

22         THE TWO ORDERS THAT PLAINTIFFS HAVE HANDED UP TO THE

23     COURT, AND THAT THEY CITED IN THEIR PAPERS, AS PLAINTIFFS NOTED

24     THOSE ARE -- THOSE WERE UNCONTESTED ORDERS.  I THINK WHAT IS

25     IMPORTANT ABOUT THAT IS NOT JUST THAT THEY WERE NOT DISPUTED

1    AND SO, THEREFORE, YOU KNOW, THAT THAT SOMEHOW SUGGESTS THAT

2    THE COURT HAD THE AUTHORITY, IT'S THAT WHERE THERE'S NOT A

3    CONTESTED REQUEST FOR AN ORDER, WE DON'T HAVE THE BENEFIT OF

4    THE COURT'S RATIONALE.

5         IF YOU LOOK AT THE ORDERS THEMSELVES, THEY DON'T CITE

6    ANY AUTHORITY FOR WHY IT'S APPROPRIATE FOR THEM TO HAVE ISSUED

7    THESE ORDERS.  AND WHILE PLAINTIFFS ARGUE THAT THERE ARE --

8    THERE'S PLENTIFUL AUTHORITY FOR THIS COURT TO ISSUE THE KIND OF

9    ORDER THAT THEY'RE SEEKING, IF YOU ACTUALLY LOOK AT THE

10   AUTHORITY THEY'VE CITED, THERE'S VERY LITTLE IN THE WAY OF

11   AUTHORITY, AND THERE'S VERY LITTLE THAT TIES BACK TO THE PLAIN

12   LANGUAGE OF RULE 45 THAT WOULD PROVIDE THIS COURT THE AUTHORITY

13   TO DO WHAT PLAINTIFFS ARE REQUESTING.

14        I'LL JUST NOTE THAT MANY OF THE CASES THAT PLAINTIFFS

15   CITE ARE EITHER THEMSELVES PRE-2013 OR RELY ON CASES THAT -- OR

16   AUTHORITY FROM PRE-2013, AND 2013 IS THE YEAR THAT RULE 45(F)

17   WAS INTRODUCED.  I DO THINK THAT RULE 45(F) IS A VERY IMPORTANT

18   CLARIFICATION.  IF YOU LOOK AT THE COMMENTARY FROM THE RULES AT

19   THAT TIME THEY MADE CLEAR THAT THE PURPOSE OF THOSE AMENDMENTS

20   TO RULE 45(F) WAS TO CLARIFY AND SIMPLIFY THE RULE.  RULE 45(F)

21   I THINK MAKES CLEAR THAT THERE ARE ONLY A COUPLE OF

22   CIRCUMSTANCES WHERE TRANSFER IS APPROPRIATE, AND SO RULE 45(D)

23   REALLY CONTROLS WHERE IN THE FIRST INSTANCE A DISPUTE OVER A

24   SUBPOENA SHOULD BE HEARD.

25        AS YOUR HONOR KNOWS FROM THE PAPERS, AND AS BOTH

1    PARTIES HAVE ACKNOWLEDGED, JUDGE DEMBIN DID RULE ON THIS ISSUE

2    WITH REGARD TO LION CAPITAL, AND IN THAT CASE LION CAPITAL DID

3    NOT CONSENT TO THE JURISDICTION OF THIS COURT, AND JUDGE

4    DEMBIN, AFTER HEARING FULL BRIEFING, FOUND THAT THE EXACT KIND

5    OF SHORT-CIRCUITING OF THE PROCESS AND COMING STRAIGHT TO THIS

6    COURT WAS NOT PROPER.  HE ISSUED A REASONED ORDER, AND THERE'S

7    REALLY NO REASON TO CIRCUMVENT OR TO QUESTION THAT ORDER.

8         THE COURT:  THAT'S WHY THEY'RE APPROACHING IT THE WAY

9    THEY ARE BECAUSE THEY KNOW THEY COULDN'T -- THERE WASN'T A

10   BASIS FOR ATTACKING OR APPEALING OR OBJECTING TO JUDGE DEMBIN,

11   SO HENCE THEY'VE COUCHED IT IN THE FRAMEWORK OF A CASE

12   MANAGEMENT PROCEDURE.

13        MS. PARIKH:  THAT'S CORRECT, YOUR HONOR.

14        THE COURT:  AND THAT WAS VERY CREATIVE, AND I MEAN NO

15   DISRESPECT IN SAYING IT THAT WAY, BUT IT WAS INTERESTING TO THE

16   COURT TO NOTE THE WAY IT WAS APPROACHED, SO I DON'T DISAGREE

17   WITH THAT COMMENT.

18        MS. PARIKH:  AND, YOUR HONOR, IT'S REALLY THE SAME

19   ARGUMENT THAT THEY'RE PRESENTING TO THIS COURT AS TO THE

20   ARGUMENT THEY RAISED WITH REGARD TO LION CAPITAL.  THE ONE

21   DISTINCTION THAT I THINK MAKES IT EVEN LESS APPROPRIATE HERE IS

22   THAT YOU HAVE NO THIRD PARTY IDENTIFIED AS OF YET WHO CAN WEIGH

23   IN AS TO WHAT THEIR INTERESTS ARE.  AT LEAST IN THAT CASE, LION

24   CAPITAL, BASED ON THEIR RESPONSES, FELT BURDENED AND DID NOT

25   WANT TO APPEAR IN THIS COURT.

1           THE THIRD PARTIES WHO ARE GOING TO BE IMPLICATED BY A

2     PROPOSED ORDER LIKE THIS ARE NOT IN A POSITION TO WEIGH IN, AND

3     SO THERE'S NO WAY TO TAKE THEIR INTERESTS INTO CONSIDERATION.

4     AND AN INTEREST BALANCING I THINK IS QUITE CLEARLY CONTEMPLATED

5     IN 45(F) AND THE COMMENTARY, AND THAT'S REALLY THE ONLY

6     MECHANISM THAT GETS YOU OUT FROM RULE 45(D).

7           PLAINTIFFS HAVEN'T CITED ANYTHING -- EVEN THOUGH THEY

8     CLAIM THAT THERE'S A LOT OF AUTHORITY FOR ISSUING THIS KIND OF

9     ORDER, THEY'VE CITED ALMOST NOTHING THAT SUGGESTS THAT THE

10    COURT HAS THE AUTHORITY TO ENTER AN ORDER THAT ALLOWS THEM TO

11    JUST BYPASS 45(D).

12          SO FOR ALL OF THESE REASONS, DEFENDANTS REQUEST THAT

13    THE JUDGE DENY PLAINTIFFS' REQUEST FOR AN ORDER.

14          THE COURT:  THANK YOU.

15          MR. BLECHMAN, I KNOW YOU WANT TO RESPOND BRIEFLY,

16    CORRECT?

17          MR. BLECHMAN:  YES, YOUR HONOR, IF I MAY.

18          THE COURT:  OF COURSE.  ONE OF THE THINGS YOU MIGHT

19    COMMENT ON, YOU THINK WHAT YOU'RE PROPOSING IS THE MOST

20    EFFICIENT VEHICLE TO GO FORWARD, BUT EFFICIENT FOR WHOM, SIR?

21    I MEAN, DON'T THE PEOPLE WHO ARE NOT HERE REPRESENTED HAVE SOME

22    INTEREST IN THE EFFICIENCY INVOLVING ISSUES RESOLVED?

23          MR. BLECHMAN:  YES.

24          THE COURT:  WHY SHOULD THEY BE BROUGHT HERE?

25          MR. BLECHMAN:  ONE, BECAUSE THIS IS AN MDL.  AND TWO,

1      BECAUSE PROTOCOLS TO ESTABLISH EFFICIENT PROCEDURES IN AN MDL

2      ARE ALMOST ALWAYS PUT TOGETHER AND IMPLEMENTED WITHOUT THE

3      INPUT OF NONPARTIES BECAUSE BY VIRTUE OF THE NATURE OF THE

4      RELIEF THAT THE COURT IS ORDERING, THE ONLY INTERESTS THAT ARE

5      BEFORE THE COURT AT THE TIME THESE KINDS OF PROTOCOLS ARE

6      IMPLEMENTED ARE THE PARTIES THEMSELVES.

7          AND THIRD, AS THIS COURT ITSELF HAS GONE OUT OF ITS WAY

8      TO RECOGNIZE IN PRIOR HEARINGS IN THIS CASE, THIS COURT HAS

9      MECHANISMS THAT IT HAS USED AND IT CAN USE TO EASE BURDEN AND

10     SIMPLIFY PROCESS FOR PEOPLE AND COMPANIES THAT ARE NOT LOCATED

11     IN THIS DISTRICT, WITH RESPECT TO LAWYERS WHO NEED TO ATTEND

12     HEARINGS OR TO BE HEARD BY THE COURT. THERE'S -- THIS IS NOT

13     TO SAY THE COURT WANTS TO DO THIS, I'M SIMPLY RECOGNIZING THESE

14     AS TECHNICAL AND EASY TO USE POSSIBILITIES.

15         THE COURT:  I UNDERSTAND.

16         MR. BLECHMAN:  THERE'S VIDEO CONFERENCING THAT'S

17     AVAILABLE.  THERE'S TELEPHONES.  THERE'S THE SUBMISSION OF

18     PAPERS.  ALL OF WHICH CAN BE DONE WITH NO MORE BURDEN THAN THE

19     BURDEN THAT IS INVOLVED IN APPEARING IN A COURTHOUSE IN A

20     FOREIGN DISTRICT, AND SO FOR THOSE THREE REASONS, YOUR HONOR --

21     WELL, I HOPE THAT ANSWERS THE QUESTION.

22         THE COURT:  NO, IT DOES ANSWER THE QUESTION.  THANK

23     YOU.

24         MR. BLECHMAN:  YOU'RE WELCOME.

25         THE COURT:  TELL ME WHATEVER ELSE YOU WOULD LIKE TO

1       TELL ME.

2              MR. BLECHMAN:  IF I MIGHT RESPOND TO A FEW OF THE

3       POINTS THAT DEFENSE COUNSEL MADE.

4              FIRST, I THOUGHT I HEARD DEFENSE COUNSEL ARGUE TO THE

5       COURT THAT RULE 45 PROVIDES BY ITS LANGUAGE THAT DISPUTES WITH

6       REGARD TO NONPARTIES AND SUBPOENAS HAVE TO BE DECIDED IN A

7       FOREIGN DISTRICT, AND THE RESPONSE TO THAT IS THE LANGUAGE OF

8       RULE 45 ITSELF WHICH USES THE WORD "MAY."  IT DOES NOT USE THE

9       WORD "SHALL."  IT DOES NOT SAY "MAY ONLY."  IT SAYS "MAY."  AND

10      WHAT GIVES EFFECT TO THE WORD "MAY," AND WHICH WE THINK SEALS

11      THE DEAL, IS WHAT IS IN 45(F), THE EXCEPTIONAL CIRCUMSTANCES,

12      AND THE ADVISORY COMMITTEE NOTE, WHICH EXPLAINS THAT WHERE YOU

13      RUN THE RISK OF INCONSISTENT RULINGS AND BURDEN AND

14      INEFFICIENCIES, IN AN MDL CERTAINLY THAT OCCURS, THAT CAN BE AN

15      EXCEPTIONAL CIRCUMSTANCE.

16             AS I SAID EARLIER, THERE ARE CASES THAT GO BOTH WAYS ON

17      THAT, BUT THE KEY POINT ON THIS RESPONSE IS THAT THE RULE IS

18      FAR FROM AS CLEAR AS DEFENSE COUNSEL IS PRESENTING TO THE

19      COURT, AND IN FACT WE THINK IT CAN BE AND SHOULD BE READ TO

20      PROVIDE AND TO ACCOMMODATE CENTRALIZED PROCEDURES FOR THE

21      ENFORCEMENT OF THE SUBPOENAS AND THAT THEY COME TO THIS COURT.

22             SECOND, WITH REGARD TO DEFENSE COUNSEL ARGUED TO THE

23      COURT THAT WE PROVIDED YOU WITH NO CASES WITH REGARD TO RULE 45

24      AND MDL STATUTE COMPLIANCE.  ASIDE FROM THE FOUR CASES THAT

25      WE'VE CITED -- THAT I'VE CITED TO YOUR HONOR IN COURT TODAY,

THERE ARE OTHER CASES THAT WE CITE IN OUR PAPERS WHICH
THEMSELVES CITE CASES.  I REFER YOUR HONOR TO THE *CONTACT LENS*
CASE, AND THE *AUTO REFINISHING* CASE, AND OTHER CASES THAT ARE
CITED IN OUR FOOTNOTES WHICH, OF COURSE, THE COURT IS FREE TO
READ.

THE DEFENSE REJOINDER TO THOSE CASES IS THAT SOME OF
THOSE CASES, AT LEAST SOME OF THE ORDERS -- EXCUSE ME, SOME OF
THE DECISIONS ON WHICH THOSE CASES RELY, WERE PRE-2013, WHEN
RULE 45 WAS AMENDED, WHICH I TOLD YOU UPFRONT.  BUT THE
POINT -- THE KEY POINT IS THAT THE MDL STATUTE WAS NOT CHANGED
IN 2013, AND SO READING RULE 45 THROUGH THE MDL STATUTE LENS
DOES NOT, THEREFORE, CHANGE THE ANALYSIS.

IN FACT, READING RULE 45 IN THE MANNER WE HAVE
SUGGESTED TO YOUR HONOR, THAT IS BASED ON THE LANGUAGE IN THE
RULE WITH "MAY," AND THE SECTION ON TRANSFER UNDER EXCEPTIONAL
CIRCUMSTANCES, IT ALL FITS TOGETHER.  IT ALL COMPLEMENTS ONE
ANOTHER, AND IT'S THE REASON WHY WHICH, WHEN YOU LOOK AND YOU
SEE THESE CASES, YOU'LL SEE A NUMBER OF MDL COURTS, INCLUDING
THE FOUR I'VE IDENTIFIED FOR YOU, BUT OTHERS, WHICH HAVE
RECOGNIZED THE VIRTUE AND THE AUTHORITY OF MDL COURTS TO ENTER
PROTOCOL ORDERS ON CENTRALIZED ENFORCEMENT.

DEFENSE COUNSEL NEXT ARGUED, YOUR HONOR, THAT USING
LION CAPITAL AS AN EXAMPLE, THAT THERE WAS A DISPUTE WITH
REGARD TO LION CAPITAL, AND I THOUGHT I HEARD DEFENSE COUNSEL
SAY THAT THERE COULD BE OTHER DISPUTES.  AND OF COURSE, YOUR

1      HONOR, THAT IS EXACTLY THE POINT OR ONE OF THE POINTS.  IT IS

2      BECAUSE WITH SO MANY SUBPOENAS TO NONPARTIES OUTSIDE OF THIS

3      DISTRICT ALREADY, AND AS I SAID, YOUR HONOR, BY MY COUNT THE

4      NUMBER I THINK IS 37, AND THERE WILL BE MORE, IF THERE ARE --

5      HAS ALREADY BEEN A DISPUTE, AND THE DEFENSE ESSENTIALLY

6      CONCEDES THAT THERE WILL BE OTHERS, THEN WE KNOW THAT

7      EFFICIENCY IS BETTER SERVED BY HAVING DISPUTES RESOLVED BY THIS

8      COURT BECAUSE THE MORE DISPUTES THERE ARE, THE GREATER

9      LIKELIHOOD THERE IS OF INCONSISTENT RULINGS, AND THE GREATER

10     THE LIKELIHOOD IS THAT DECISIONS ARE GOING TO BE MADE THAT

11     AFFECT DISCOVERY IN THIS CASE THAT ARE GOING TO BE MADE BY

12     FEDERAL DISTRICT JUDGES WHO, DESPITE BEING VERY SKILLED AND

13     KNOWLEDGEABLE, SIMPLY DO NOT -- LACK YOUR HONOR'S KNOWLEDGE

14     ABOUT THIS MDL AND THE FACTS AND CIRCUMSTANCES PRESENTED.

15          FOURTH, DEFENSE COUNSEL MADE AN ARGUMENT ABOUT

16     BALANCING INTERESTS IN NONPARTIES AND HOW DO WE TAKE THEM INTO

17     ACCOUNT.  THE INTEREST BALANCING WE SUBMIT, YOUR HONOR, IS

18     TAKEN INTO ACCOUNT AND ULTIMATELY WEIGHS IN FAVOR OF ALL THE

19     LAWYERS THAT ARE IN THIS MDL, AND IN FAVOR OF YOUR HONOR IN

20     THIS COURT, BECAUSE OF THE INEFFICIENCIES THAT ARE PRESENTED IF

21     YOU DO ANYTHING LESS THAN THAT.

22          FOR SUPPORT, I GO BACK TO MY ANSWER TO YOUR HONOR TO

23     THE QUESTION THE COURT POSED WHEN I BEGAN MY TIME JUST NOW IN

24     REBUTTAL, ABOUT WHY AREN'T WE TAKING INTO ACCOUNT NONPARTIES?

25     HOW DO WE DO THAT?  WELL, THE ANSWER IS THAT WE DO, AND YOU

1    CAN, AND THERE'S MECHANISMS AVAILABLE TO THIS COURT, AND

2    VEHICLES THAT IT HAS USED, INCLUDING AT THIS HEARING AND AT

3    OTHER TIMES, THAT IT COULD EASILY DO THAT.

4         FINALLY, YOUR HONOR, I THOUGHT I HEARD DEFENSE COUNSEL

5    SAY THAT THE MDL STATUTE IS SILENT ABOUT WHETHER AN MDL COURT

6    HAS AUTHORITY TO CENTRALIZE PROCEEDINGS FOR ENFORCEMENT OF

7    SUBPOENAS TO NONPARTIES WITH REGARD TO DOCUMENTS, AND THAT

8    ARGUMENT IS, OF COURSE, CHANNELLING SOMETHING THAT I SAID TO

9    THIS COURT IN MY OPENING REMARKS, WHICH IS THAT 28 U.S.C.

10   1407(B) PROVIDES IN SUBSTANCE THAT AN MDL COURT HAS SUPERVISORY

11   POWERS OVER DEPOSITIONS OF NONPARTIES OUTSIDE THE DISTRICT, BUT

12   WHAT IS NOT SAID, BUT I WANT TO REMIND THE COURT BECAUSE THIS

13   MATTERS, IS THAT A NUMBER OF MDL COURTS HAVE READ 28 U.S.C.

14   1407(B) TO MEAN THAT IT ALSO APPLIES TO DOCUMENTS, AND THERE

15   ARE A NUMBER OF CASES THAT SAY THAT.

16        AND, IMPORTANTLY, THE MDL STATUTE HAS NOT CHANGED

17   BETWEEN BEFORE 2013 AND AFTER 2013, SO THOSE CASES WE THINK,

18   YOUR HONOR, PROVIDE PERSUASIVE AUTHORITY TO THIS COURT ABOUT

19   THE IMPLEMENTATION OF A PROCEDURE EARLY ON IN THIS PROCESS OF

20   -- EXCUSE ME, NOT EARLY ON, BUT IN THE PROCESS WITH SO MANY

21   SUBPOENAS THAT ARE OUT THERE TO NONPARTIES.  THIS REQUEST

22   PROVIDES A MECHANISM AND A WAY FOR THE COURT TO IMPLEMENT A

23   PROCEDURE WHICH IS, ON BALANCE, UNDENIABLY THE MOST EFFICIENT

24   WAY TO ADMINISTER THIS ISSUE.  THANK YOU.

25        THE COURT:  IS THERE A NEED TO RESPOND TO ANYTHING OR

1    IS THIS ISSUE CONCLUDED?

2              MS. PARIKH:  NO, YOUR HONOR.  THANK YOU.

3              THE COURT:  VERY GOOD.  LET'S MOVE ON TO THE ISSUE OF

4    -- THE SECOND ISSUE THAT YOU SET FORTH, IT'S ABOUT THE FIFTH

5    AMENDMENT, BUT IT SOUNDED TO ME, FROM WHAT WAS IN THE PAPERS,

6    THAT THIS IS A NON-ISSUE BECAUSE DEFENDANTS HAVEN'T RECEIVED A

7    RESPONSE FROM PLAINTIFFS, BUT THEY'RE EFFECTIVELY AGREEING TO

8    THE ORIGINAL REQUEST, SO WHO WANTS TO MAKE SHORT WORK OF THIS

9    AND TELL ME THERE'S AN AGREEMENT.

10             MR. BLECHMAN:  YOUR HONOR HAS A GOOD EYE, AND IN FACT

11   WE'VE CONTINUED TO TALK AND -- PLAINTIFFS AND DEFENSE COUNSEL,

12   AND WE THINK THIS ISSUE CAN BE TAKEN OFF THE TABLE BECAUSE WE

13   THINK WE HAVE THE BASIS FOR UNDERSTANDING TO GET SOMETHING DONE

14   HERE.

15             THE COURT:  EXCELLENT.

16             MR. ROBERTI:  WE AGREE WITH THAT.

17             THE COURT:  EXCELLENT.  I WAS HOPING THAT WOULD BE THE

18   CASE.

19             THE THIRD ISSUE RELATES TO DISCOVERY STATUS AND

20   POTENTIAL IMPACT ON THE SCHEDULE.  THAT'S ALWAYS THE CASE,

21   DISCOVERY IMPACTS THE SCHEDULE.  SO GO AHEAD, COUNSEL.

22             MS. SWEENEY:  THANK YOU, YOUR HONOR.

23             THE COURT:  AND THE PAPERS INDICATED TO ME THAT YOU

24   WERE CONTINUING TO TALK, YOU REALLY DIDN'T HAVE ANYTHING FIRM

25   TO SUBMIT OR SUGGEST AT THIS POINT.

1          MS. SWEENEY:  THAT'S CORRECT.  BONNY SWEENEY FOR THE

2     DIRECT PURCHASER CLASS PLAINTIFFS.

3          WE HAVE BEEN TALKING WITH DEFENSE COUNSEL.  WE'RE GOING

4     TO NEED MORE TIME FOR OUR CLASS CERTIFICATION MOTIONS BASED ON

5     THE CURRENT SCHEDULE.

6          THE COURT:  THAT DOESN'T SURPRISE ME AT ALL.

7          MS. SWEENEY:  IT'S NOT SURPRISING GIVEN THE VOLUME OF

8     DISCOVERY AND THE STAYS THAT HAVE BEEN IN PLACE BECAUSE OF THE

9     DOJ ACTION, SO WE'RE NOT YET IN A POSITION TO OFFER UP A

10    PRECISE SCHEDULE TO YOUR HONOR.  OUR HOPE IS THAT WE CAN STAY

11    WITHIN THE BOUNDS OF THE OUTSIDE LIMITS OF THE CURRENT

12    SCHEDULE.  THAT IS, IN JUNE OF 2019 THE PARTIES ARE REQUIRED TO

13    SUBMIT THEIR DISPOSITIVE MOTIONS, AND WE EXPECT THAT WE CAN

14    EXTEND THE SCHEDULE ON CLASS CERTIFICATION WITHOUT HAVING TO

15    CHANGE THAT DATE IN JUNE 2019.

16         AS I MENTIONED, WE'VE ONLY BEGUN THE DISCUSSIONS WITH

17    THE DEFENDANTS AS TO PRECISELY HOW MUCH TIME WE NEED AND HOW

18    MUCH TIME THEY WILL AGREE TO OR NOT, BUT WE'RE THINKING

19    SOMEWHERE IN THE RANGE OF ABOUT TWO MONTHS FOR THE CLASS

20    CERTIFICATION MOTION.

21         THE COURT:  TWO MONTHS FROM THE DATE THAT'S CURRENTLY

22    SET?

23         MS. SWEENEY:  THE CURRENT DATE IS MARCH 30TH, AND WE

24    KNOW FROM DISCUSSIONS WE'VE HAD JUST IN THE LAST FEW DAYS THAT

25    SOME OF THE MATERIAL THAT WE HAVE ASKED FOR IS NOT GOING TO BE

1    PRODUCED UNTIL MARCH, SOME OF IT MAY NOT EVEN BE PRODUCED UNTIL

2    THE VERY END OF MARCH.  SOME OF IT IS DATA, AND OUR EXPERTS

3    HAVE TOLD US THAT THE DATA COMES IN MANY DIFFERENT FORMATS AND

4    IT TAKES TIME TO MASSAGE THE DATA TO GET IT INTO USABLE FORMAT,

5    SO THAT'S WHY WE WILL PROBABLY NEED AT LEAST TWO MONTHS.

6         THE COURT:  TWO MONTHS FROM MARCH 30TH?

7         MS. SWEENEY:  CORRECT, YOUR HONOR.

8         THE COURT:  I JUST WANTED TO BE CLEAR.

9         MS. SWEENEY:  AND JUST TO POINT OUT ALSO THAT THERE'S A

10   LOT OF TIME BUILT INTO THE SCHEDULE, SO WE HAVE FIVE AND-A-HALF

11   MONTHS FOR CLASS CERTIFICATION BRIEFING.  WE'VE GOT SIX MONTHS

12   FOR THE EXPERT REPORTS AND EXPERT DISCOVERY, SO WE'RE HOPEFUL

13   THAT WE CAN REACH AGREEMENT WITH DEFENSE COUNSEL WITHOUT HAVING

14   TO CHANGE THOSE LATTER DATES IN THE SCHEDULE.

15        THE COURT:  HOW SOON WILL YOU HAVE THAT SCHEDULE FIRMED

16   UP AND SUBMITTED TO THE COURT DO YOU THINK, COUNSEL?

17        MS. SWEENEY:  I WOULD LIKE TO GET THIS DONE CERTAINLY

18   BEFORE THE END OF TWO WEEKS, HOPEFULLY BEFORE THAT.

19        THE COURT:  YOU SAY WITHIN ABOUT 10 DAYS WE WOULD

20   HOPEFULLY HAVE A JOINT SCHEDULE?

21        MS. SWEENEY:  YES, YOUR HONOR.

22        THE COURT:  THAT BROUGHT MS. LEE TO HER FEET.

23        MS. LEE:  YEAH.  MAY I BE HEARD, YOUR HONOR?

24        THE COURT:  CERTAINLY.

25        ARE YOU FINISHED, MS. SWEENEY?

1          MS. SWEENEY:  I'LL RESPOND TO ANYTHING THAT YOUR HONOR

2     NEEDS ME TO RESPOND TO OR THAT I NEED TO RESPOND TO MS. LEE --

3          THE COURT:  IS THAT ALL YOU WANTED TO SAY ON THIS

4     ISSUE?

5          MS. SWEENEY:  I THINK SO, YOUR HONOR.  JUST TO POINT

6     OUT ALSO THAT WE HAVE BEEN MEETING AND CONFERRING ON A VERY

7     REGULAR BASIS AS TO THESE DOCUMENTS AND OTHER DISCOVERY ISSUES.

8          THE COURT:  EXCELLENT.  THANK YOU.

9          MS. LEE, GO AHEAD.

10          MS. LEE:  YOUR HONOR, DEFENDANTS ARE OBVIOUSLY WILLING

11     TO MEET AND CONFER WITH PLAINTIFFS ON THE SCHEDULE.  THIS WAS

12     THE VERY FIRST TIME THAT WE HEARD THAT THEY WERE INTERESTED IN

13     A TWO-MONTH EXTENSION OF THEIR FILING DEADLINE.  I WILL SAY,

14     YOUR HONOR, THAT IT IS A LITTLE FRUSTRATING FROM OUR

15     PERSPECTIVE TO HEAR THAT THEY NEED TO MOVE THESE DATES BECAUSE

16     OF DATA PRODUCTIONS WHEN DATA WAS THE ONE CATEGORY OF DISCOVERY

17     THAT WAS CARVED OUT OF THE DOJ STAY FROM THE VERY BEGINNING, SO

18     THAT IS SOMETHING THAT THEY COULD HAVE BEEN TAKING DISCOVERY ON

19     AND PURSUING FROM THE VERY BEGINNING OF THIS CASE, AND WE ARE

20     WHERE WE ARE TODAY BECAUSE OF PLAINTIFFS AND THEIR DELAYS IN

21     PURSUING DATA.

22          NOW, YOUR HONOR, AS I SAID, WE ARE HAPPY TO TALK WITH

23     THE PLAINTIFFS, BUT AS YOUR HONOR WELL KNOWS, WE'VE ALREADY

24     MOVED THE SCHEDULE ONCE, AND IT WAS QUITE AN ENDEAVOR TO

25     NEGOTIATE ALL OF THE DATES BECAUSE ALL OF THE DATES ARE

```
 1          RELATED, AND NOT EVERYBODY ON THE PLAINTIFFS' SIDE -- I KNOW

 2     MR. BLECHMAN HAD SOME DIFFERENT OPINIONS ON DATES WHEN IT CAME

 3     TO MOVING DATES PREVIOUSLY.  SO WHILE WE'RE OPEN TO NEGOTIATING

 4     WITH PLAINTIFFS ON MOVING THE CLASS CERTIFICATION DATE, IT'S

 5     NOT QUITE SO EASY AS JUST TAKING TIME HERE AND MOVING

 6     EVERYTHING ELSE BECAUSE THE DATES DO CAUSE THEN OVERLAPS IN

 7     OTHER DEADLINES.

 8          THE COURT:  AND SO YOU'RE NOT A HUNDRED PERCENT CERTAIN

 9     THERE WILL BE AN AGREEMENT.  PEOPLE ARE GOING TO SUBMIT THEIR

10     RESPECTIVE VIEWS, AND I'LL MAKE A DECISION.  THAT'S NOT A

11     PROBLEM.

12          MS. LEE:  RIGHT.  YOUR HONOR, LIKE I SAID, THIS WAS THE

13     VERY FIRST TIME WE HEARD FROM THEM THAT THEY WANTED TWO MONTHS.

14     SO WE'RE WILLING TO TALK TO THEM, BUT I IMAGINE IT MAY BE A

15     PROCESS.

16          THE COURT:  VERY WELL.  UNDERSTOOD.

17          MS. LEE:  THANK YOU.

18          MS. SWEENEY:  I JUST WANT TO RESPOND BRIEFLY TO

19     SOMETHING THAT MS. LEE SAID.

20          THE COURT:  SURE.

21          MS. SWEENEY:  THERE ARE TWO DEFENDANTS THAT HAVEN'T YET

22     PRODUCED DATA, EVEN THOUGH IT WAS ASKED FOR A LONG TIME AGO,

23     AND THAT'S BECAUSE THEY WAITED UNTIL THE MOTION -- DECISION BY

24     YOUR HONOR THAT PUT THEM INTO THE CASE, AND SO WE DON'T HAVE

25     THAT DATA.  WE NEED THAT DATA.
```

1       IN ADDITION, THERE ARE CERTAIN CATEGORIES OF DOCUMENTS

2   THAT HAVEN'T BEEN PRODUCED BECAUSE THEY WEREN'T PART OF THE

3   DEPARTMENT OF JUSTICE PRODUCTION, SO THE DEFENDANTS DIDN'T

4   PRODUCE THEM WHEN THEY PRODUCED THE OTHER DOJ DOCUMENTS.  THERE

5   WAS A LONG NEGOTIATION OVER THE SEARCH TERMS.  EVEN AFTER WE

6   REACHED AGREEMENT ON THE SEARCH TERMS, THE DEFENDANTS,

7   INCLUDING MS. LEE'S CLIENT, HAVE TAKEN CONSIDERABLE AMOUNTS OF

8   TIME IN ACTUALLY PRODUCING THEM, SO I JUST WANT TO PUSH BACK

9   AGAINST THE SUGGESTION THAT THE PLAINTIFFS HAVE NOT BEEN

10  DILIGENTLY PURSUING THE DISCOVERY IN THIS MATTER.

11      AND WHILE WE WANT TO SEEK AS MODEST AN EXTENSION AS

12  POSSIBLE, I JUST WANTED TO ALERT THE COURT THAT IT MAY BE AS

13  LONG AS TWO MONTHS.  THANK YOU, YOUR HONOR.

14      THE COURT:  UNDERSTOOD.

15      MR. BLECHMAN, OF COURSE.

16      MR. BLECHMAN:  THANK YOU, YOUR HONOR.  BRIEFLY, BECAUSE

17  I DON'T WANT MY SILENCE HERE TO BE MISINTERPRETED, WE WANT TO

18  HOLD ONTO THE SCHEDULE THE WAY IT IS.  WE'LL CERTAINLY IN GOOD

19  FAITH CONFER WITH OTHERS, BUT MS. SWEENEY IS CORRECT, AND MS.

20  LEE IS CORRECT IN NOTING THAT WE HAVE WANTED TO KEEP THE

21  SCHEDULE TO THE EXTENT WE CAN, SO I WON'T SAY MORE THAN THAT AT

22  THIS POINT, BUT I DIDN'T WANT MY SILENCE TO BE MISREAD.  THANK

23  YOU.

24      MR. ISQUITH:  YOUR HONOR, I WONDER IF I COULD HAVE JUST

25  30 SECONDS.

1        THE COURT:  OF COURSE YOU CAN.  I HEAR YOU BETTER IF

2   YOU COME HERE BECAUSE THERE ARE TWO MICS THERE, SO THAT'S

3   HELPFUL.

4        MR. ISQUITH:  I STUTTER LESS FROM HERE.  FRED ISQUITH.

5   I THINK EVERYONE IN THE ROOM, INCLUDING MR. BLECHMAN AND THE

6   PLAINTIFFS, WOULD LIKE NOT TO CHANGE THE END POINTS OF THE

7   SCHEDULE.  THAT IS, YOUR HONOR HAS AN END POINT FOR DISPOSITIVE

8   MOTIONS.  THERE IS END POINTS ON EXPERT DISCOVERY AND SO FORTH.

9   WHAT WE'RE TALKING ABOUT HERE IS COMPRESSING PARTS OF THE

10  SCHEDULE, WHICH WERE VERY GENEROUS.

11       THE REASON I MAKE THIS COMMENT IS BECAUSE I DON'T THINK

12  IT IMPINGES ON THE ULTIMATE END POINTS WHICH I THINK IS A

13  CORRECT CONCERN OF THE DIRECT DAPS, AND WHILE I'M NOT SURE THAT

14  IT IMPINGES ON THE TIME DEALING WITH THE CLASS MOTION, EVEN IF

15  THERE WERE AN OVERLAP IN EXPERTS, FOR EXAMPLE, THE ULTIMATE

16  IDEA OF GETTING THAT MOTION TO YOU IN THE FALL, IN OCTOBER,

17  REMAINS OUR GOAL AND SHOULDN'T -- I DON'T THINK ANYTHING WE'RE

18  GOING TO SUGGEST WILL MAKE THAT A DIFFICULT GOAL TO ACCOMPLISH.

19       THE COURT:  OKAY.  THANK YOU.  I APPRECIATE IT.

20       DID YOU WANT TO ADD SOMETHING, MS. LEE?

21       MS. LEE:  YOUR HONOR, I DISAGREE WITH SOME OF MS.

22  SWEENEY'S CHARACTERIZATIONS ABOUT WHO WAS CAUSING THE DELAY AND

23  OVER WHAT AND WHEN, I DON'T THINK IT'S REALLY WORTH YOUR TIME,

24  YOUR HONOR, TO DIG INTO ALL OF THAT.

25       I WOULD JUST SAY, AS I SAID BEFORE, WE'RE HAPPY TO MEET

1    AND CONFER WITH THE PARTIES, THOUGH WE ARE CONCERNED ABOUT HOW

2    ANY DELAY WILL IMPACT OTHER DEADLINES, PARTICULARLY IF THE DAP

3    PLAINTIFFS ARE NOT AGREEABLE TO MOVING THOSE DEADLINES AS WELL.

4            THE COURT:  OKAY.  THANK YOU.

5            I THINK THAT'S EVERYTHING PEOPLE WANTED TO DISCUSS.  I

6    HAVE A COUPLE OF THINGS THAT I WOULD JUST LIKE TO COVER BY WAY

7    OF KEEPING US ALL ON THE SAME TRACK.

8            NOW, I CURRENTLY HAVE SOME MOTIONS PENDING TO ADD NEW

9    PARTIES, AND I WONDERED IF ANYBODY WAS HERE SPEAKING ON BEHALF

10   OF LION.  NOBODY HERE IS GOING TO STEP FORWARD AND SAY ANYTHING

11   ON BEHALF OF THOSE FOLKS, OKAY.  VERY WELL.

12           OUR CEO/PRESIDENT HAS FILED OPPOSITION TO THOSE

13   MOTIONS, AND SO I HAVE THAT, SO WE CAN DEEM THAT SUBMITTED.  NO

14   COMMENTS FROM ANYBODY, OKAY.

15           THE SECOND POINT, WITH REGARD TO THE CHEROKEE NATION,

16   NOBODY IS HERE --

17           MR. ISQUITH:  YOUR HONOR, THIS IS REBECCA ANZIDEI FROM

18   THE CHEROKEE NATION.

19           THE COURT:  WOULD YOU COME FORWARD, MA'AM.

20           MS. ANZIDEI:  OF COURSE, YOUR HONOR.

21           THE COURT:  THANK YOU.  INITIALLY YOU WANTED TO BE

22   INCLUDED AS A DIRECT ACTION PLAINTIFF BECAUSE YOU NEEDED TO

23   HAVE YOUR OWN COMPLAINT, BUT NOW YOU WANT TO BE AN END

24   PURCHASER PLAINTIFF, CORRECT?  DO I HAVE THAT CORRECT?

25           MS. ANZIDEI:  CLOSE.

1           THE COURT:  INITIALLY YOU WANTED TO HAVE YOUR OWN

2     TRACK, AND I REALLY AM GLAD YOU DON'T WANT TO BE YOUR OWN

3     TRACK, FOUR IS ENOUGH.  WE DIDN'T NEED TO START A FIFTH.

4           MY REVIEW OF EVERYTHING WAS THAT YOU WANTED TO BE A

5     DIRECT ACTION PLAINTIFF BECAUSE YOU NEED TO HAVE YOUR OWN

6     COMPLAINT.  YOU CAN'T CONSOLIDATE A COMPLAINT WITH SOMEBODY

7     BECAUSE YOU'VE GOT SOME UNIQUE AREAS THAT YOU WANT TO COVER,

8     AND I APPRECIATE THAT.

9           MS. ANZIDEI:  CORRECT, YOUR HONOR.

10          THE COURT:  BUT THEN KNOWING THAT, YOU NOW ARE

11    INDICATING, IF I'M UNDERSTANDING EVERYTHING CORRECTLY, THAT YOU

12    WANT TO BE IN THE END PURCHASER PLAINTIFF CLASS AND NOT IN

13    DIRECT ACTION.

14          MS. ANZIDEI:  WELL, YOUR HONOR, AFTER WE FILED A

15    MOTION, WE HAD FURTHER CONVERSATIONS WITH VARIOUS MEMBERS OF

16    THE VARIOUS PLAINTIFFS' TRACKS AND THEY IMPRESSED UPON US THE

17    POTENTIAL DISRUPTION THAT WOULD BE CAUSED BY TRYING TO CREATE A

18    FIFTH TRACK AT THIS STAGE, WHICH OBVIOUSLY WAS NOT OUR

19    INTENTION.  AND SO THE UNDERSTANDING OR AGREEMENT THAT WE WERE

20    ABLE TO REACH WAS THAT WE WOULD BE TREATED AS PART OF THE EPP

21    TRACK, AND SORT OF SUBSUMED AS PART OF THEIR TRACK, BUT WE

22    WOULD STILL PROSECUTE OUR OWN COMPLAINT TO THE EXTENT THERE ARE

23    DIFFERENCES.

24          THE COURT:  SO WHY NOT BE IN THE DIRECT ACTION IF

25    YOU'RE GOING TO BE PROSECUTING YOUR OWN COMPLAINT AND HAVING

1        DIFFERENCES FROM EVERYBODY?  JUST CONCEPTUALLY IT DOESN'T MAKE

2        SENSE TO ME, AND I'M WONDERING WHY, JUST FROM THE -- EXPLAIN

3        THAT TO ME.

4             MS. ANZIDEI:  SURE.  WE HAVE SOME SIMILARITIES WITH

5        BOTH, AND SO I THINK WE --

6             THE COURT:  I UNDERSTAND THAT.

7             MS. ANZIDEI:  -- WE COULD LEGITIMATELY BR PLACED IN

8        EITHER THE DIRECT ACTION PLAINTIFF TRACK BECAUSE WE HAVE SOME

9        SIMILARITIES THERE.  WE ALSO FOR THE MOST PART WERE END-PAYER

10       CONSUMERS, AND SO WE HAVE A LOT OF SIMILARITIES IN TERMS OF THE

11       EPP TRACK, AND SO THAT WAS WHY WE FIGURED WE COULD BE IN -- WE

12       HAVE SOME SIMILARITIES AND SOME DIFFERENCES WITH BOTH, AND SO

13       WE JUST HAPPENED TO BE TALKING TO THE EPP'S AND SO THAT WAS WHY

14       WE SOUGHT THAT.

15            THE COURT:  BUT YOU CAN'T BE IN THE CLASS.

16            MS. ANZIDEI:  NO, WE'RE NOT PART OF THE CLASS.

17            THE COURT:  THEN WHY WOULDN'T YOU, JUST FROM A

18       MANAGEMENT STANDPOINT, PUT YOU WITH EVERYBODY ELSE WHO IS NOT

19       PART OF THE CLASS -- WHO HAS GOT THEIR OWN COMPLAINTS AND

20       AREN'T PART OF THE CLASS, WHICH IS WHAT THE DIRECT ACTION

21       PLAINTIFFS ARE BECAUSE THEY'RE UNIQUELY SITUATED.  THEY'RE SUCH

22       BIG PLAYERS.

23            I DON'T KNOW ENOUGH ABOUT THE CHEROKEE NATION TO KNOW

24       EXACTLY HOW THAT WOULD FIT IN, BUT THEY'RE UNIQUELY SITUATED

25       AND WANTED TO BE ON THEIR OWN, SO THAT'S MY QUESTION ABOUT

1      THAT.  I DON'T DOUBT THAT EVERYBODY HAS THOUGHT ABOUT THIS, AND

2      SO WE NEED TO UNDERSTAND BETTER WHY YOU THOUGHT YOU SHOULD GO

3      INTO THE EPP.  I MEAN, I WAS THRILLED THAT YOU DIDN'T WANT THE

4      FIFTH TRACK, BUT THEN YOUR PLACEMENT I QUESTION.

5            MS. ANZIDEI:  CERTAINLY, YOUR HONOR.  WE AS THE NATION

6      WOULD BE FINE BEING PLACED IN THE DAP TRACK, BUT I THINK THAT

7      MAYBE --

8            THE COURT:  MR. BLECHMAN TALKED YOU INTO THIS?

9            MS. ANZIDEI:  NO.

10           THE COURT:  I'M SORRY, MR. BLECHMAN.

11           MR. BLECHMAN:  DON'T WORRY ABOUT IT, YOUR HONOR.

12           MS. ANZIDEI:  THAT'S NOT SOMETHING THAT WE NECESSARILY

13     CAN JUST DECIDE, AND SO THAT MAY BE WORTH A CONVERSATION, AND

14     OBVIOUSLY HAVING YOUR HONOR'S THOUGHTS ON THE MATTER IS VERY

15     HELPFUL AND INFORMATIVE, AND IT MAY BE NOW THAT A CONVERSATION

16     NEEDS TO BE HAD WITH BOTH MR. ISQUITH AND MR. BLECHMAN TO SEE

17     WHAT THEIR VIEWS ARE ON IT.

18           MR. ISQUITH:  YOUR HONOR, IF I COULD INTERJECT

19     SOMETHING.

20           THE COURT:  CERTAINLY, BUT I HEAR YOU BETTER OVER HERE.

21           MR. ISQUITH:  I UNDERSTAND.  THERE IS A RATIONALE

22     BEHIND IT.

23           THE COURT:  I NEED TO HEAR THAT, SIR.

24           MR. ISQUITH:  AND THE REASON YOU NOW HAVE NO OPPOSITION

25     FROM ANYONE IS THAT --

1           THE COURT:  AND THAT'S ALWAYS A GOOD THING.  I JUST

2      NEED TO UNDERSTAND WHY.

3           MR. ISQUITH:  AT THIS POINT WE CAN STIPULATE, ALONG

4      WITH THE DEFENSE.  THE REASON IS BECAUSE OF OVERLAPPING

5      INDIVIDUALS, THAT IS, THE CHEROKEE NATION REPRESENTS A DIVERSE

6      SET OF MEMBERS OF THE CHEROKEE TRIBE THAT LIVE BOTH ON THE

7      RESERVATION AND ALL OVER THE COUNTRY.  MOST, I THINK -- WELL,

8      MOST, MAYBE HALF OF THE CHEROKEE TRIBE/NATION LIVES IN REPEALER

9      STATES, WHICH ARE ALREADY COVERED BY OUR CLASS.  THEY'RE CLASS

10     MEMBERS.  SO IN DISCUSSING THE ISSUE WITH THE ATTORNEY

11     GENERAL'S REPRESENTATIVE, WE THOUGHT, WELL, SINCE THE

12     ECONOMICS -- SOME OF THE ECONOMICS OF WHAT THEY'RE ALLEGING,

13     AND SINCE SOME OF THEIR CLASS MEMBERS -- SOME OF THE PEOPLE

14     THEY REPRESENT AS PARENS PATRIAE ARE REPRESENTED WITHIN THE

15     CLASS, SINCE THEY WOULD EASILY FIT INTO THIS TRACK, EXCEPT FOR,

16     AT THE MOMENT, THEIR SEPARATE CLAIM, WHICH OF COURSE WILL AT

17     SOME POINT BE BEFORE YOUR HONOR.

18           AND DEPENDING ON YOUR HONOR'S DECISION WITH REGARD TO

19     THAT, IT WILL BE EASILY FOLDED IN, NOT FOLDED IN, WHATEVER, BUT

20     IN THE MEANTIME THE DISCOVERY THAT WE'RE TAKING, THE

21     DEPOSITIONS WE'RE TAKING -- AND MY COLLEAGUE HERE IS PART OF

22     THAT ALREADY, AS WELL AS SHE'S RECEIVED ALL THE DOCUMENTS, AND

23     THIS, THAT, AND THE OTHER THING -- WILL HAVE BEEN MELDED INTO

24     THE FULL REPRESENTATION.  MOST OF THEM ARE INDIRECT PURCHASERS,

25     AND THAT WAS THE REASON THEY FIT IN.

1          THE COURT:  THAT'S VERY HELPFUL.  I NEEDED TO HEAR

2     THAT.

3          ANYBODY ELSE WANT TO COMMENT ON THAT?  THAT WAS

4     HELPFUL.

5          ANYTHING ELSE FROM YOU, COUNSEL, ON BEHALF OF THE

6     CHEROKEE NATION?

7          MS. ANZIDEI:  NO, YOUR HONOR.

8          THE COURT:  THANK YOU.

9          THE FINAL THING THAT WAS ON MY AGENDA WAS BUMBLE BEE

10    HAS AN OBJECTION TO JUDGE DEMBIN'S ORDER WITH REGARD TO

11    ANSWERING INTERROGATORY NUMBER 1.

12         MR. GALLO:  CORRECT, YOUR HONOR.

13         THE COURT:  I THINK THAT'S BEEN SUBMITTED.  IT'S JUST

14    BETWEEN BUMBLE BEE -- I THINK IT'S ONLY BUMBLE BEE'S ISSUE, AND

15    THAT'S IT, NOBODY ELSE.  I THINK THAT'S FULLY BRIEFED, BUT I

16    JUST WANTED TO KIND OF OUTLINE WHAT'S ON MY LIST OF THINGS, AND

17    SO YOU'LL GET SOMETHING FROM THE COURT SOON, UNLESS YOU WANT TO

18    TO BE HEARD OR COMMENT -- ANY COMMENTS OTHER THAN WHAT'S IN

19    YOUR PAPERS ALREADY.

20         MR. GALLO:  YOUR HONOR, WE HAVE NO DESIRE TO COMMENT ON

21    IT TODAY.  IF THE COURT EVER WISHES TO HEAR ARGUMENT --

22    OBVIOUSLY IT'S AN IMPORTANT ISSUE TO US BECAUSE WE DON'T WANT

23    TO VIOLATE ANY COURT ORDERS, AND SO IF THE COURT EVER WISHED TO

24    HEAR ARGUMENT, WE WOULD BE PLEASED TO APPEAR, BUT OTHERWISE IT

25    IS FULLY BRIEFED.

```
1              THE COURT:  AND THAT'S YOUR ISSUE ALONE.

2              MR. GALLO:  IT IS OUR ISSUE ALONE.

3              THE COURT:  OKAY.  VERY WELL.

4              THE OTHER THING WE SHOULD TALK ABOUT IS SHOULD WE SET

5      ANOTHER STATUS?  WHERE SHOULD WE GO FROM HERE?  I LOOK FORWARD

6      TO LEARNING SOMETHING ABOUT THE SCHEDULING BECAUSE THAT'S

7      IMPORTANT.  THAT MARCH 30TH DATE IS COMING UP, AND WE NEED TO

8      DO THAT, BUT IF PEOPLE HAD SUGGESTIONS.

9              MR. BLECHMAN, GO AHEAD, SIR.

10             MR. BLECHMAN:  THANK YOU, YOUR HONOR.  EARLIER IN THE

11     CASE THE COURT HAD SET PERIODIC SCHEDULING CONFERENCES ON THE

12     CALENDAR, WHICH HAVE REAL PROPHYLACTIC EFFECTS IN HELPING MOVE

13     THE CASE THROUGH.  WE'VE GOTTEN TO A POINT NOW WHERE IT'S BEEN

14     OFF-CALENDARED.

15             WE'RE NOW MOVING INTO WHAT WILL BE THE BUSIEST PART OF

16     THE CASE, DISCOVERY.  UNDER THE CIRCUMSTANCES, AND IN RESPONSE

17     TO YOUR HONOR'S QUESTION, WE WOULD SUGGEST THAT THE COURT SET

18     ON CALENDAR A STATUS CONFERENCE EVERY EIGHT WEEKS AT A MINIMUM,

19     AND AT YOUR HONOR'S PLEASURE, COUNSEL ON BOTH SIDES CAN CONFER

20     AND SUGGEST DATES TO THE COURT OR THE COURT CAN SIMPLY ADVISE

21     US, HOWEVER YOUR HONOR DIRECTS, BUT AT A MINIMUM WE THINK THAT

22     THAT WOULD BE A HELPFUL DEVICE.

23             PLAINLY, AND IN KEEPING WITH PROCEDURES THAT LAWYERS ON

24     BOTH SIDES IN THIS CASE HAVE FOLLOWED TO DATE, IF IT TURNS OUT

25     THAT WE DON'T NEED A STATUS CONFERENCE, THEN NOBODY HERE IS SHY
```

1    ABOUT ALERTING THE COURT, YOUR HONOR, OF THAT FACT.

2         THE COURT:  OR IF WE CAN TAG IT ONTO AN ALREADY

3    SCHEDULED ORAL ARGUMENT OR SOMETHING OF THAT NATURE, WE'LL DO

4    THAT, AS WE DID ONCE BEFORE.

5         MR. BLECHMAN:  EXACTLY.

6         THE COURT:  DO YOU HAVE DATES IN MIND AT THIS JUNCTURE

7    OR NOT?

8         MR. BLECHMAN:  I DO.  BUT IN FAIRNESS, I HAVEN'T TALKED

9    TO DEFENSE COUNSEL.

10        THE COURT:  THAT'S ALWAYS A GOOD THING TO DO.

11        MR. BLECHMAN:  WITH THE COURT'S PERMISSION, I WOULD

12   JUST AS SOON TALK TO DEFENSE COUNSEL FIRST.

13        THE COURT:  AND WHAT YOU COULD DO, WHILE YOU'RE TALKING

14   ABOUT THE REST OF THE SCHEDULE, YOU COULD PUT IN THERE THE

15   CONFERENCE DATES -- STATUS CONFERENCE DATES.

16        MR. BLECHMAN:  VERY WELL, YOUR HONOR.

17        THE COURT:  MS. LEE.

18        MS. LEE:  YOUR HONOR, THANK YOU.  WHEN THIS TOPIC CAME

19   UP PREVIOUSLY ON THE DEFENSE SIDE, I KNOW WE WERE CONCERNED

20   THAT EIGHT WEEKS WAS A LITTLE TOO FREQUENT, AND WE THOUGHT THAT

21   IT DIDN'T REALLY GIVE THE PARTIES ENOUGH TIME TO ACTUALLY TRY

22   AND DO THINGS IN BETWEEN STATUS CONFERENCES, AND AT THE TIME

23   OUR SUGGESTION WAS ONCE EVERY THREE MONTHS RATHER THAN EVERY

24   TWO MONTHS, BUT WE'RE HAPPY TO WORK WITH PLAINTIFFS.  I'M SURE

25   WE CAN FIND A COMPROMISE ON A SCHEDULE.

1      MY ONLY OTHER SUGGESTION IS THAT IN SETTING THE

2    SCHEDULE FOR UPCOMING STATUS CONFERENCES, WE ALSO SET A

3    SCHEDULE FOR IDENTIFYING AND EXCHANGING AGENDA TOPICS WELL IN

4    ADVANCE OF THESE STATUS CONFERENCES SO THAT WE HAVE TIME TO

5    FULLY VENTILATE THE ISSUES AND HOPEFULLY TOPICS WILL ACTUALLY

6    DROP OFF OF THE AGENDA BETWEEN WHEN WE IDENTIFY THEM AND THEN

7    WHEN WE ACTUALLY COME TO SEE YOUR HONOR.

8      THE COURT:  AND WE SET SOME DEADLINES, DIDN'T WE?  I

9    DIDN'T KNOW WHY THIS PARTICULAR AGENDA KIND OF SEEMED TO GET

10   CAUGHT UP IN SOMETHING, AND THEN WHEN I SAW IT, I WAS

11   ABSOLUTELY AMAZED AS TO WHY WE WERE SO CONCERNED ABOUT IT AND

12   SO DELAYED WITH IT, BUT I'M SURE THERE WERE DISCUSSIONS GOING

13   ON.  YOU DON'T NEED ME TO DO ANYTHING ELSE OR DO YOU, MS. LEE?

14     MS. LEE:  NO.  WE HAD TALKED ABOUT IT IN THE PAST.  I

15   WOULD JUST SUGGEST THAT AS WE SET THE SCHEDULE THAT PART OF THE

16   SCHEDULE THAT IS ULTIMATELY ENTERED BY THE COURT INCLUDE KIND

17   OF THE DATES AND DEADLINES FOR IDENTIFYING AGENDA TOPICS AND

18   MEETING AND CONFERRING ON THAT.

19     THE COURT:  OKAY.  THAT WOULD BE FINE.  YOU CAN SUGGEST

20   THOSE, AND I'LL MODIFY AS NEED BE.  VERY WELL.  ANYTHING ELSE?

21     MR. BLECHMAN:  NO, YOUR HONOR, NOT FROM THE PLAINTIFFS.

22     THE COURT:  OKAY, FROM ALL THE PLAINTIFFS.

23     ANYTHING FROM ALL OF THE DEFENDANTS?

24     MS. LEE:  NO, YOUR HONOR.

25     MR. YATES:  THANK YOU, YOUR HONOR.

1              THE COURT:  THANK YOU.  YOU'LL GET SOMETHING FROM THE

2       COURT.

3              MR. BLECHMAN:  THANK YOU.

4              MS. SWEENEY:  THANK YOU, YOUR HONOR.

5              MS. LEE:  THANK YOU, YOUR HONOR.

6       (THE HEARING CONCLUDED.)

7

8

9

10

11                    C E R T I F I C A T E

12

13              I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
        QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
14      STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
        ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
15      ABOVE-ENTITLED MATTER ON FEBRUARY 22, 2018; AND THAT THE FORMAT
        USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
16      STATES JUDICIAL CONFERENCE.

17

18      DATED:  FEBRUARY 24, 2018      /S/ GAYLE WAKEFIELD
                                       GAYLE WAKEFIELD, RPR, CRR
19                                     OFFICIAL COURT REPORTER

20

21

22

23

24

25